**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARL AND JANICE DUFFNER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16-CV-01971-JAR |
| | ) | |
| CITY OF ST. PETERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of St. Peters' motion for summary judgment. (Doc. No. 12). The matter has been fully briefed and is ready for disposition. For the reasons set forth below, Defendant's motion will be granted as to Counts I and II, and the Court will decline to exercise supplemental jurisdiction over Counts III, IV, and V.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Carl and Janice Duffner own and live in a residential property in the City of St. Peters, Missouri ("the City"). (Complaint ("Compl."), Doc. No. 1, at ¶ 9). On May 14, 2014, the City sent Plaintiffs a letter indicating that their yard was in violation of City Ordinance 405.390 (hereinafter referred to as the "Turf Grass Ordinance"), which requires that "[a] minimum of fifty percent (50%) of all yard areas shall be comprised of turf grass." (Doc. No. 13-22). Plaintiffs had been keeping a flower garden that covered their entire yard. (Compl. at ¶ 1). Plaintiffs' yard did not contain any turf grass because Janice Duffner is allergic to grass. (*Id.*). Plaintiffs allege their continued violation of the Turf Grass Ordinance could subject them to a fine of more than $180,000 and 20 years' imprisonment. (*Id.* at ¶ 2).

On May 23, 2014, Plaintiffs applied for a variance, requesting that they not be required to plant any turf grass. (Doc. 1-6). On July 1, 2014, the City of St. Peters Board of Zoning

Adjustment ("BOA") granted a variance, reducing the amount of turf grass required from 50% to 5%. (Doc. No. 1-9). The BOA required the grass area to be placed in the front yard or in the side yard in front of the fence and provided Plaintiffs with a December 1, 2014 compliance deadline. (*Id.*).

<u>State Court Action</u>

Plaintiffs refused to comply with the variance and, on September 25, 2014, they filed a petition in the Circuit Court of St. Charles County ("state trial court") challenging the Turf Grass Ordinance and asserting the following four counts: (1) violations of Plaintiffs' state and federal substantive due process rights; (2) denial of equal protection of the laws under the state and federal constitutions; (3) violations of state constitutional protections concerning the taking of private property; and (4) the exercise of excessive state statutory zoning power. (Doc. No. 13-2).

The City filed a motion to dismiss, asserting that the petition failed to state a claim upon which relief could be granted. (Doc. No. 13-3). On April 22, 2015, the state trial court granted the City's motion to dismiss, holding that the allegations were a collateral attack on the order of the BOA. (Doc. No. 13-4 at 2). As a result, the state trial court held that it did not have subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies, and that Plaintiffs' constitutional challengers were waived because they were not raised at the earliest opportunity. (*Id.* at 3).

Plaintiffs appealed and, on January 12, 2016, the Missouri Court of Appeals affirmed the state court's dismissal of Counts I and II of the petition and remanded Counts III and IV for further proceedings. (Doc. No. 13-6). Specifically, with regard to Count I, the Court of Appeals held that a claim under 42 U.S.C. § 1983 for violation of a substantive due process right was not a collateral attack on the BOA's decision, but rather an attack on the validity of the Turf Grass Ordinance itself. (*Id.* at 8). Therefore, Plaintiffs were not required to exhaust administrative

remedies before pursuing their state action. However, although the state trial court had subject matter jurisdiction to address Count I, the Court of Appeals determined that Count I failed to state a claim upon which relief could be granted because Plaintiffs failed to allege the higher standard of truly irrational conduct in their petition. (*Id.* at 15-16).

As to Count II, which challenged the terms of the variance, the Court of Appeals held that Plaintiffs were aggrieved by a particular decision of the BOA acting in its administrative capacity. (*Id.* at 10). This, the Court of Appeals reasoned, was a collateral attack on a decision of the BOA, and Plaintiffs had to first exhaust administrative remedies before bringing suit. (*Id.* at 11). The Court of Appeals also held that Plaintiffs were not required to administratively exhaust their remedies with regard to Count III, a state constitution takings/inverse condemnation claim, and that Plaintiffs properly pled such a claim. (*Id.* at 9-10). As to Count IV, the Court of Appeals held that the allegation that the City exceeded its statutory zoning power by enacting the Turf Grass Ordinance was not an attack on the decision of the board, but rather an attack on the validity of the ordinance itself. (*Id.* at 8). Therefore, the Court concluded that Count IV was sufficient to state a claim. In sum, the Court of Appeals affirmed the state trial court's dismissal of Counts I and II, but reversed the state trial court's dismissal of Counts III and IV.

Following the decision of the Court of Appeals, Plaintiffs filed a motion to modify the appellate court's decision, requesting that the order instruct the state trial court to address the merits of Plaintiffs claim under 42 U.S.C. § 1983 (Count I). (Doc. No. 13-7). The Court of Appeals denied the motion.

On remand, the City filed a motion for summary judgment, arguing that Plaintiffs' claim of inverse condemnation (Count III) was barred by the applicable statute of limitations, and Count IV (exceeding statutory zoning power) failed as a matter of law because the Turf Grass Ordinance was authorized under statutory and common law. (Doc. No. 11 at 2). Thereafter, Plaintiffs filed

a motion to amend their petition to (1) clarify the basis of its claim as to Count I; (2) challenge the validity of additional City ordinances; and (3) add a count asserting that Plaintiffs' choice to cultivate and maintain flowers rather than turf grass was an expressive act protected by the First Amendment. (Doc. No. 13-12). The state trial court denied the motion on July 27, 2016, concluding that it was untimely and raised no new facts or circumstances that could not have been raised in the original petition. (Doc. No. 13-13). On September 6, 2016, Plaintiffs dismissed their state court action without prejudice. (Doc. No. 13-14).

Federal Court Action

On December 19, 2016, Plaintiffs filed this action in federal court. (Doc. No. 13-15). In their complaint, Plaintiffs seek declaratory and injunctive relief for the following violations: (1) the deprivation of their fundamental rights to use private property in harmless, lawful manners of the owner's choosing and to exclude unwanted persons from private property, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and Article 1, Section 10 of the Missouri Constitution; (2) the violation of the prohibition against excessive fines and cruel and unusual punishment under the Eighth Amendment; (3) the taking of private property for private use and exceeding the proper scope of the police power, in violation of Article 1, Section 28 of the Missouri Constitution; (4) the taking or damaging private property without just compensation, in violation of Article 1, Section 26 of the Missouri Constitution; and (5) exceeding statutory zoning power, in violation of Missouri law.

Shortly after Plaintiffs filed their federal action, the City sent them a letter on October 18, 2016, stating that they remained in violation of the variance granted to them, and that failure to comply with the variance by December 16, 2016 would result in a court summons. The City filed the instant motion for summary judgment on March 6, 2017. (Doc. No. 12).

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co–op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249 *Celotex*, 477 U.S. at 324.

**DISCUSSION**

I.      **Count I – Deprivation of Fundamental Right to Use Private Property in Harmless, Lawful Manners of the Owner's Choosing and of Fundamental Right to Exclude Unwanted Persons from Private Property (42 U.S.C. § 1983; Fourteenth Amendment; Article I, Section 10 of the Missouri Constitution)**

Res Judicata

In its motion for summary judgment, the City first argues that the doctrine of res judicata bars Plaintiffs from asserting their claims under Count I because Plaintiffs had a full and fair opportunity to litigate this issue before the state trial court. Plaintiffs disagree, arguing that there was no final judgment in the state court case, thereby precluding the application of res judicata.

The doctrine of res judicata, also known as claim preclusion, is designed to promote judicial economy by preventing litigants from bringing repetitive lawsuits based on the same cause of action. *See Baptiste v. Commissioner,* 29 F.3d 433, 435 (8th Cir. 1994). "The law of the forum that rendered the first judgment controls the res judicata analysis." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoted case omitted). In this case, that forum is Missouri. Under Missouri law, res judicata applies where "(1) the prior judgment was rendered by a court of competent jurisdiction, (2) the decision was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases." *Biermann v. United States*, 67 F. Supp. 2d 1057, 1060 (E.D. Mo. 1999) (citing *De Llano v. Berglund*, 183 F.3d 780, 781 (8th Cir. 1999)).

Generally, a dismissal failing to indicate that it is with prejudice is deemed to be without prejudice. *Atkins v. Jester*, 309 S.W.3d 418, 423 (Mo. Ct. App. 2010); Missouri Supreme Court Rule 67.03. "In a case of a dismissal without prejudice, a plaintiff typically can cure the dismissal by filing another suit in the same court; hence, a dismissal without prejudice is not a final judgment for purposes of appeal." *Id.* (internal citation omitted). However, "[t]he dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amounts to a determination that the plaintiff has no action. In such a case, the judgment of dismissal—albeit without prejudice—amounts to an adjudication on the merits and may be appealed." *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. 1991). In

other words, "[i]f a plaintiff has elected to stand on a dismissed petition and not plead further substantial facts, such dismissal is considered a final judgment for purposes of appeal. *Dunn v. Bd. of Curators of Univ. of Mo.*, 413 S.W.3d 375, 377 (Mo. Ct. App. 2013).

Here, the Missouri Court of Appeals dismissed Count I (which is substantially similar to Count I in the instant complaint) for failure to state a claim for which relief can be granted, but did not indicate whether the dismissal was with or without prejudice. On remand, Plaintiffs sought leave to amend Count I "to clarify the nature of and bases for their claim and to include an allegation that the Turf Grass Mandate is 'truly irrational,' as the Court of Appeals indicated would be necessary to preserve such a claim." (Doc. No. 13-12). The state trial court, citing *Moore v. Firstar Bank*, 96 S.W. 3d 898 (Mo. Ct. App. 2003), denied the motion because the amended pleading itself raised no new facts or circumstances that could not have been raised in the original petition. (Doc. No. 13-13). In this lawsuit, Plaintiffs argue that their complaint "offers an array of facts not asserted in the [state court] Petition and addresses the deficiency that led the Court of Appeals to dismiss without prejudice Count I of the Petition." (Doc. No. 23 at 12).

The issue before the Court is whether, under Missouri law, Plaintiffs' attempt to amend their petition upon remand renders the appellate court's dismissal of Count I without prejudice, such that it does not have res judicata effect. Based on the Missouri Supreme Court's holding in *Mahoney*, 807 S.W. 2d 503, the Court believes that a Missouri state court would find that Plaintiffs elected to plead further, rendering the dismissal of Count I to be without prejudice and, therefore, without res judicata effect.

The City argues that Missouri law precludes a plaintiff from re-filing a petition that was dismissed for failure to state a claim when it relies on facts substantially identical to those previously alleged, but the City fails to cite to any case law addressing the precise issue present here. Plaintiffs elected not to stand on a dismissed petition. Instead, they attempted to plead

additional facts and cure the defects present in the petition. The Court, upon review of case law in Missouri, believes the Missouri Supreme Court would find that by seeking to amend their petition, there is no judgment on the merits that would preclude Plaintiffs from refiling Count I.

<u>Facial Challenge to the Ordinance</u>

Plaintiffs challenge the Turf Grass Ordinance on its face, alleging that by requiring a resident to plant and maintain turf grass on his or her private property, the Turf Grass Ordinance violates a fundamental right and, therefore, warrants heightened judicial scrutiny.

When an ordinance restricts a fundamental right or liberty, that law will facially violate the Fourteenth Amendment "unless the infringement is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997). Although "[t]he identification and protection of fundamental rights [. . .] has not been reduced to any formula," *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015), the Supreme Court has provided some guidance in determining whether a particular right is "fundamental." First, the allegedly fundamental right must be given a "careful description." *Glucksberg*, 521 U.S. at 721. Next, the Court must inquire into whether the right is "deeply rooted in this Nation's history," *id.*, bearing in mind that "[h]istory and tradition guide and discipline this inquiry but do not set its outer boundaries." *Obergefell*, 135 S. Ct. at 2598.

Here, Plaintiffs have failed to identify a fundamental right that is restricted by the Turf Grass Ordinance. In their briefing, Plaintiffs characterize the allegedly fundamental right as a property right, the right to use private property in a harmless, lawful manner of the owner's choosing, and the owner's right to exclude unwanted persons and things from private property. (Compl. at 22-23). However, these descriptions are too general and not in accord with the Supreme Court's "tradition of carefully formulating the interest at stake in

substantive-due-process cases." *Glucksberg*, 521 U.S. at 722.[1]   Indeed, if the Court were to recognize such broad property rights as fundamental, many, if not all, zoning laws would become subject to heightened judicial scrutiny.   This would be inconsistent with Supreme Court precedent which, since *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 387 (1926), has reviewed zoning regulations under the lower, rational-basis standard.   *See, e.g., Village of Belle Terre v. Boraas*, 416 U.S. 1, 7 (1977) (finding that a zoning ordinance prohibiting more than two individuals not related by blood, marriage or adoption from living together "involve[d] no 'fundamental right' guaranteed by the Constitution" and therefore only needed to be "reasonable" and "not arbitrary").   Similarly here, the Turf Grass Ordinance does not restrict a fundamental property right warranting heightened judicial scrutiny.[2]

The Court next turns to whether, on its face, the Turf Grass Ordinance is arbitrary, capricious, and not rationally related to a legitimate governmental interest.   *WMX Techs., Inc. v. Gasconade Cnty., Mo.*, 105 F.3d 1195, 1198 n. 1 (8th Cir. 1997).   In practice, the Eighth Circuit has collapsed the "arbitrary" and "capricious" requirements into the "rationally related" standard. *See, e.g., Karsjens v. Piper*, 845 F.3d 394, 407-08 (8th Cir. 2017) ("[T]he proper standard of scrutiny to be applied to plaintiffs' facial due process challenge is whether [the statute] bears a rational relationship to a legitimate government purpose").   Plaintiffs have the burden of demonstrating that the ordinance is not rationally related to a legitimate state purpose.   *WMX*

---

[1]     In *Glucksberg*, the Supreme Court held that the "liberty to choose how to die" was too general, instead defining the right as a competent person's "constitutionally protected right to refuse lifesaving hydration and nutrition." *Glucksberg*, 521 U.S. at 723.

[2]     Plaintiffs contend that the Turf Grass Ordinance violates the property owner's "right to exclude unwanted persons or physical presences." (Doc. No. 23 at 23).   However, the cases cited by Plaintiffs specifically concern the right to exclude third-parties and physical presences owned by third parties.   That is not the case here.   Plaintiffs are not required to permit the City or other parties to intrude upon their property. Thus, the Turf Grass Ordinance is more akin to smoke alarm requirements and other conditions of occupancy that municipalities frequently impose for health and safety purposes.

*Techs., Inc.*, 105 F.3d at 1198. Therefore, to prevail on their facial constitutional challenge, Plaintiffs must either (1) demonstrate that the purported government purpose is not a "legitimate" government purpose, or (2) demonstrate that the ordinance does not bear a "rational relationship" to the purportedly legitimate government purpose. *Karsjens*, 845 F.3d at 408.

The Supreme Court has consistently held that aesthetic considerations constitute a legitimate government purpose. *See, e.g. Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984)("municipalities have a weighty, essentially [a]esthetic interest in proscribing intrusive and unpleasant formats for expression"); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 530 (1981) (concluding that the city's aesthetic interests were sufficiently substantial to provide an acceptable justification for a content-neutral prohibition against the use of billboards and that the city's interest in its appearance was undoubtedly a substantial governmental goal). "The concept of public welfare is broad and inclusive. [. . .] It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." *Berman v. Parker*, 348 U.S. 26, 33 (1954).

A plaintiff may still challenge an ordinance appearing on its face to achieve a legitimate governmental purpose by demonstrating that the ordinance bears no rational relationship to the purported end. In considering whether a rational relationship exists, "legislative bodies are given broad latitude in their legislative determinations 'and it is not the province of the courts to monitor the inputs into each legislative decision.'" *WMX Techs., Inc.*, 105 F.3d at 1201. For this reason, the Court asks "only whether a conceivable rational relationship exists between the ordinance and legitimate governmental ends. If so, the ordinance will stand." *Id.* (emphasis added).

Plaintiffs concede that the City has identified government interests (public health, safety, and welfare) that satisfy a legitimate government interest. However, they dispute whether the

Turf Grass Ordinance substantially advances those interests. The City maintains in its briefing that the Turf Grass Ordinance was designed to serve the government's interest in "subdu[ing] the proliferation of noxious and invasive weeds and vegetation, eliminat[ing] vermin and other pests in residential areas, and ameliorat[ing] water run-off problems or otherwise achiev[ing] soil retention of open areas." (Doc. No. 13 at 10). However, the City points to no evidence in the record supporting this purported interest.

Instead, based on the summary judgment record, it appears that the Turf Grass Ordinance was primarily enacted for aesthetic reasons. The City does identify Section 405.030 of the City Code (the codification of Ordinance 1523), which is titled "Purpose" and provides: "In order to promote the health, safety, morals, comfort and general welfare; to conserve and protect property and property values; to secure proper use of land; to facilitate adequate and economical public improvements and services; and to lessen or avoid congestion on the public streets; the following regulations and zones are imposed throughout the corporate limits of the City of St. Peters, Missouri." (Doc. No. 19). However, this broadly applies to all City zoning ordinances and offers little insight as to the purpose of the Turf Grass Ordinance specifically.

The minutes of a June 18, 2014 meeting of the BOA, during which time the BOA considered Plaintiffs' request for a variance, sheds light on the purpose of the Turf Grass Ordinance. (Doc. No. 1-7). The Turf Grass Ordinance was approved after several complaints about a single family home that used a mix of landscaping materials in their entire front yard, including some wild flowers and other natural grasses which were not weeds, but gave the appearance of weeds. (*Id*. at 6). By requiring 50% turf grass be planted in yard, the BOA believed the homeowner "could still have the flexibility to have a large vegetable garden, planting beds, and other unique applications to yard design while maintaining a yard that meets the community standard." (*Id.*). The Turf Grass Ordnance was thus enacted to "ensure that the

City's neighborhoods retain the quality and character that property owners observe and expect." (*Id*. at 7).

The BOA acknowledged that in Plaintiffs' case, many of the plantings were attractive and well-kept with low-growing ground cover, giving the appearance, height, and scale similar to grass. (*Id*. at 6). Thus, a variance was granted, requiring only 5% of the lawn to be turf grass, thus preserving the aesthetic considerations of the ordinance.

Plaintiffs have failed to demonstrate that the Turf Grass Ordinance bears no rational relationship to the purported end. Aesthetic considerations have traditionally been held to advance a legitimate government interest, and the Turf Grass Ordinance advances that interest. Thus, Plaintiffs'' facial challenge to the Turf Grass Ordinance fails.

As Applied Challenge to the Ordinance

When making an "as applied" due process challenge, the challenger "must show that the government action complained of . . . is 'truly irrational.'" *WMX Techs., Inc.*, 105 F.3d at 1198 n. 1. When the challenged law concerns land use, this showing requires "something more than . . . arbitrary, capricious, or in violation of state law." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006) (internal quotations and citations omitted). "The action must therefore be so egregious or extraordinary as to shock the conscience." *Id.* Thus, even if Plaintiffs were successful in showing that the Turf Grass Ordinance violates the Missouri Constitution; this would not implicate the Federal Constitution. *See Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992) (reasoning that an as-applied due-process challenge to a zoning ordinance would have failed "even if the City had knowingly enforced [an] invalid ordinance in bad faith and had no claim that [County] zoning applied to the property").

Plaintiffs have provided no evidence supporting their claim that application of the Turf Grass Ordinance satisfies the "truly irrational" standard. The Eighth Circuit has opined that the

application of an ordinance "only to persons whose names begin with a letter in the first half of the alphabet," *id.* at 1104, or by "flipping a coin," *Lemke*, 846 F.2d at 472, would be truly irrational because they "bear[] no relationship whatever to the merits of the pending matter." *Id.* The application of the Turf Grass Ordinance to Plaintiffs does not meet this level of truly irrational conduct by the City. Therefore, Plaintiff's as-applied challenge fails as a matter of law.

## II. Count II – Violation of Prohibition Against Excessive Fines and Cruel and Unusual Punishment (42 U.S.C. § 1983; Eighth Amendment; Article I, Section 10 of the Missouri Constitution)

In Count II, Plaintiffs contend that the Turf Grass Ordinance violates the Eighth Amendment's prohibition against excessive fines. The City again argues that Plaintiffs' claims are barred under the doctrine of res judicata. Plaintiffs respond that at the time the state court suit was filed, Plaintiffs still had two months to comply with the City's variance. Therefore, Plaintiffs argue that their Eighth Amendment claim was not ripe until they received a letter from the City in October 2016 advising Plaintiffs that their property violated the variance granted to them by the City, and that continued non-compliance would result in a court summons.

The Court agrees with Plaintiffs that their Eighth Amendment claim was not ripe until October 2016. While res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action, Plaintiffs did not have a ripe claim at the time the state lawsuit was filed. The claim became ripe after Plaintiffs had filed their state court action. Thus, res judicata does not apply to bar Plaintiffs' claims.

The Eighth Amendment provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII, § 1. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). For

13

excessive fine claims, a plaintiff must show: (1) gross disproportionality; and (2) the disproportionality is of such a level that the punishment is more criminal than the crime. *United States v. Dodge Caravan*, 387 F.3d 758, 763 (8th Cir. 2004). Judgments about the appropriate punishment for an offense belong in the first instance to the legislature. *Bajakajian*, 524 U.S. at 336.

Plaintiffs argue that there is a factual dispute regarding the constitutionality of the City's penalty provision because the evidence shows that Plaintiffs' flower garden "has not harmed anyone and is not likely to harm anyone," and Plaintiffs contend that the penalty provision is grossly disproportionate to the violation. (Doc. No. 23 at 33). The City responds that the penalty provision sets forth penalties that fall within the penalty amount authorized by the Missouri legislature, and that the Court should defer to the legislature's broad authority to set punishment. Specifically, the Missouri legislature authorized municipalities to impose fines ranging between $10 and $250 per day for as long as the violation continues, as well as imprisonment at the discretion of the Court. *See* Mo. Rev. Stat. § 89.120. Section 405.815 of the City's code mirrors the authority granted to it by the legislature, providing that "the owner […] of a building or premises where a violation of any provision of [the City Code] has been committed or shall exist [. . .] shall be punishable by a fine of not less than ten dollars ($10.00) and not more than two hundred fifty dollars ($250.00) for each and every day that such violation continues or by imprisonment for ten (10) days for each and every day such violation shall continue or by both such fine and imprisonment in the discretion of the court." Plaintiffs fail to cite, and the Court has not found, any case law holding that a penalty provision similar to that imposed by the City for violations of the Turf Grass Ordinance is excessive and violative of the Eighth Amendment. Thus, Count II fails as a matter of law.

**III.     State Law Claims (Counts III, IV, and V)**

Plaintiff asserts purely state law claims in Counts III, IV, and V, as well as in Count I, as discussed more fully above.   In Counts III and IV, Plaintiffs claim that the Turf Grass Ordinance constitutes a taking of private property for private and public use without just compensation, which exceeds the scope of the city's police power and is prohibited by the Missouri Constitution.   In Count V, Plaintiffs claim that the Turf Grass Ordinance was enacted without express authority under Missouri's zoning laws or general police powers.   Plaintiff specifically cites to Mo. Rev. Stat. §§ 89.020 and 89.040, which set forth powers allotted to municipal legislative bodies, and argue that the Turf Grass Ordinance exceeds the authority given to municipalities by the legislature.

"Federal courts are courts of limited jurisdiction."   *Myers v. Richland County*, 429 F.3d 740, 745 (8th Cir. 2005).   District courts have original jurisdiction under the federal question statute over cases "arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   The supplemental jurisdiction statute provides that in civil cases where the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).   Section 1367 codifies the principle that federal courts have jurisdiction over state-law claims that "derive from a common nucleus of operative fact" with a claim over which the district court has original jurisdiction such that the federal and state claims "would ordinarily be expected to [be tried] all in one judicial proceeding."   *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007).

The Court, however, may decline to exercise its supplemental jurisdiction and hear the remaining state law claims if: (1) the state law claims raise a novel or complex issue of state law;

(2) the state law claims predominate over the claims over which the Court had original jurisdiction; (3) the Court dismissed all claims over which it had original jurisdiction; or (4) in "exceptional circumstances," there are other compelling reasons for declining jurisdiction. *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994) (quoting 28 U.S.C. § 1367(c)). If one of these statutory factors is present, the Court must weigh the interests of judicial economy, convenience, fairness, and comity to determine whether to exercise jurisdiction. *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1019 (8th Cir. 2011). "[I]n the usual case," these factors will "point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

The Eighth Circuit has directed district courts to exercise judicial restraint and avoid state law issues whenever possible, directing courts to "recognize within principles of federalism the necessity to provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). Here, the only claims that remain involve zoning authority and police powers under municipal and state laws. These claims raise novel and complex issues of state law, and predominate over the claims over which the Court had original jurisdiction. Moreover, the Court dismissed all claims over which it had original jurisdiction.

Significant aspects of this case have already been extensively litigated and decided by Missouri state courts. Judicial economy favors the state court's disposition of the state law claims. The lack of established state law on the remaining claims, particularly with regard to Plaintiffs' claim that the City exceeded its statutory zoning power, causes the Court to believe that fairness and comity favor a state forum. Moreover, issues concerning takings and zoning are "clearly not federal questions and are better left for the state courts to review." *Id.* Therefore,

the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss those counts without prejudice to their refiling in state court.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Peters' motion for summary judgment (Doc. No. 12) is **GRANTED** as to Counts I and II, as set forth more fully in this Order.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Counts III, IV, and V, and hereby **DISMISSES** Counts III, IV, and V **without prejudice**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 28th day of March, 2018.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE